IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| IN RE MICROSOFT CORP. | * | |
| ANTITRUST LITIGATION | * | MDL 1332 |
| | * | |
| This document relates to: | * | |
| | * | |
| STATE OF WEST VIRGINIA, *ex rel.* | * | |
| DARRELL V. McGRAW, JR., | * | |
| ATTORNEY GENERAL, | * | |
| | * | |
| v. | * | Civil No. JFM-02-2091 |
| | * | |
| MICROSOFT CORPORATION | * | |
| | ***** | |

MEMORANDUM

Plaintiff, State of West Virginia ex rel Darrell V. McGraw, Jr., Attorney General ("the State" or "West Virginia"), moves to remand this action to the Circuit Court of Boone County, West Virginia. The motion will be granted. The motion for attorneys' fees and costs will, however, be denied.

I.

On May 18, 1998, West Virginia filed an action against Microsoft in the District of Columbia alleging violations of federal antitrust law, the West Virginia Antitrust Act, and the West Virginia Consumer Credit and Protection Act. The district court subsequently held a bench trial and entered judgment. See United States v. Microsoft Corp., 97 F. Supp. 2d 59 (D.D.C. 2000); United States v. Microsoft Corp., 87 F. Supp. 2d 30 (D.D.C. 2000); United States v. Microsoft Corp., 84 F. Supp. 2d 9 (D.D.C. 1999). On appeal, the D.C. Circuit Court of Appeals affirmed in part, reversed in part, and vacated the district court's judgment. United States v.

Microsoft Corp., 253 F.3d 34 (D.C. Cir.) (en banc), cert. denied, 122 S. Ct. 350 (2001). Following remand, the United States and nine States agreed to a settlement of their claims against Microsoft and proposed a Revised Proposed Final Judgment ("RPFJ") to the district court. Nine other States, including West Virginia, and the District of Columbia opposed the settlement and sought more extensive remedies. On November 1, 2002, Judge Kollar-Kotelly of the district court issued several rulings. Judge Kollar-Kotelly conditionally approved the RPFJ. United States v. Microsoft Corp., __ F. Supp. 2d __, 2002 WL 31439450 (D.D.C. 2002). Additionally, Judge Kollar-Kotelly denied the requests of West Virginia and the other so-called "dissenting" States for more extensive remedies than those sought in the RPFJ. New York v. Microsoft Corp., 224 F. Supp. 2d 76 (D.D.C. 2002).

On December 3, 2001, West Virginia filed this action in the Circuit Court of Boone County, West Virginia, alleging only state law claims that Microsoft violated West Virginia's Antitrust Act, West Virginia's Consumer Credit and Protection Act, and West Virginia's Unfair Practices Act. After Microsoft removed the action to the Southern District of West Virginia, the State filed this motion to remand. The motion was pending when the action was transferred to this court on June 17, 2002 by the Judicial Panel on Multidistrict Litigation ("MDL").

II.

In its motion, the State argues that remand is appropriate because none of the claims it has asserted arise under federal law. Microsoft, in response, points to the enigmatic "footnote two" in Federated Dep't Stores, Inc v. Moitie, 452 U.S. 394, 397 n.2 (1981), as the basis for removal.

A.

Microsoft's removal to federal court is premised on federal question jurisdiction. "The well-pleaded complaint rule requires that federal question jurisdiction not exist unless a federal question appears on the face of a plaintiff's properly pleaded complaint." Columbia Gas Transmission Corp. v. Drain, 237 F.3d 366, 370 (4th Cir. 2001) (citing Merrell Dow Pharm., Inc. v. Thompson, 478 U.S. 804, 808 (1986)). There is, however, an exception to the well-pleaded complaint rule known as artful pleading.

"Under the doctrine of 'artful pleading,' a court is permitted to look behind a complaint to determine whether a plaintiff is attempting to conceal the federal nature of his claim by fraud or obfuscation." In re Wireless Tel. Radio Frequency Emissions Prod. Liab. Litigation, 216 F. Supp. 2d 474, 492 (D. Md. 2002) (citation omitted). Artful pleading is best described as "the manner in which some plaintiffs . . . manage to plead claims that are actually federal . . . under state law." Id.

Two categories of artful pleading cases are firmly established: cases involving complete preemption of state law by federal law, see, e.g., Rivet v. Regions Bank of Louisiana, 522 U.S. 470, 475 (1998), and cases involving substantial questions of federal law. See, e.g., Merrell Dow, 478 U.S. at 807 n.2; Franchise Tax Board v. Constr. Laborers Vacation Trust for S. Cal., 463 U.S. 1, 27-28 (1983). The parties agree that neither of these categories applies in this case.

Instead, Microsoft attempts to rely on a third potential category of artful pleading cases: those falling within Moitie's footnote two. Moitie began as an antitrust suit brought by the United States against various department stores in which it was alleged that the stores had violated section 1 of the Sherman Act, 15 U.S.C. § 1 by agreeing to fix the retail price of

women's clothing sold in northern California. Moitie, 452 U.S. at 395. Subsequently, various private plaintiffs filed seven parallel actions. Six plaintiffs, including Brown (Brown I), brought suit in the United States District Court for the Northern District of California. See id.; see also Arthur R. Miller, Artful Pleading: A Doctrine in Search of Definition, 76 Tex. L. Rev. 1781, 1801 (1998). Moitie brought a separate parallel action in state court (Moitie I). Each of the complaints tracked, almost identically, the language of the Government's complaint, although the Moitie I complaint referred solely to state law. Moitie, 452 U.S. at 396. All of the actions originally filed in federal district court were consolidated before one judge and the Moitie I case was removed there on the basis of diversity and federal question jurisdiction. Id. Moitie did not challenge removal. See Miller, supra, at 1801. The District Court then dismissed all of the actions in their entirety because the plaintiffs had failed to plead an injury actionable under the Clayton Act, 15 U.S.C. § 15.

Of the seven suits, plaintiffs in five of the suits appealed the dismissal. Moitie, 452 U.S. at 396. The lawyer for Brown and Moitie, however, refiled the two actions in state court (Brown II and Moitie II). The complaints in both cases purported to raise solely state law claims. Both complaints, however, made allegations similar to those made in their previous complaints and in the Government's complaint. The defendants removed the case to federal court on the grounds that the complaints were artfully plead federal claims. The defendants also moved to have the claims dismissed. Id.

Subsequently, the district judge denied Moitie and Brown's motion to remand, holding that the complaints, though artfully couched in terms of state law, were "in many respects identical" with the previous complaints and were properly removed because they raised

"essentially federal law" claims. Id. The district court also held that under the doctrine of res judicata, Moitie II and Brown II were dismissed. On appeal, the Ninth Circuit affirmed the district court's ruling on removal; however, it also created a "novel exception to the doctrine of res judicata" and reversed the district's court's dismissal of Moitie II and Brown II. Id. at 397-98.

The Supreme Court granted certiorari to consider the validity of the Ninth Circuit's holding on res judicata. Id. at 398. In its opinion, the Supreme Court paid little attention to the issue of removal and focused almost entirely on the res judicata issues. The Court addressed the issue of removal in one footnote that reads in its entirety:

> The Court of Appeals also affirmed the District Court's conclusion that Brown II was properly removed to federal court, reasoning that the claims presented were 'federal in nature.' We agree that at least some of the claims had a sufficient federal character to support removal. As one treatise puts it, courts 'will not permit plaintiff to use artful pleading to close off defendant's right to a federal forum . . . [and] occasionally the removal court will seek to determine whether the real nature of the claim is federal, regardless of plaintiff's characterization.' 14 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure §§ 3722, pp. 564-566 (1976) (citing cases) (footnote omitted). The District Court applied that settled principle to the facts of this case. After 'an extensive review and analysis of the origins and substance of' the two Brown complaints, it found, and the Court of Appeals expressly agreed, that respondents had attempted to avoid removal jurisdiction by 'artful[ly]' casting their 'essentially federal law claims' as state-law claims. We will not question here that factual finding. See Prospect Dairy, Inc. v. Dellwood Dairy Co., 237 F. Supp. 176 (NDNY 1964); In re Wiring Device Antitrust Litigation, 498 F.Supp. 79 (EDNY 1980); Three J Farms, Inc. v. Alton Box Board Co., 1979-1 Trade Cases ¶¶ 62,423 (SC 1978), rev'd on other grounds, 609 F.2d 112 (CA4 1979), cert. denied, 445 U.S. 911, 100 S.Ct. 1090, 63 L.Ed.2d 327 (1980).

Moitie, 452 U.S. at 397 n.2.

B.

Following the Moitie decision, different courts of appeals took two different approaches

in interpreting its footnote two.[1] In Travelers Indem. Co. v. Sarkisian, 794 F.2d 754 (2d. Cir. 1986), the Second Circuit developed a "forum election" interpretation of Moitie. See N.A.A.C.P. v. Metro. Council, 144 F.3d 1168, 1171 (8th Cir. 1998). The Second Circuit identified two conditions that must be met for removal to be appropriate under Moitie: (1) the elements of the state law claims are virtually identical to those of a claim expressly grounded on federal law; and (2) the plaintiff previously elected to proceed in federal court. Sarkisian, 794 F.2d at 760. Specifically, the Sarkisian court noted that:

> Brown had an initial opportunity to be master of his price-fixing claim and elected to assert it under the Clayton Act in federal court. Having done so and having foregone the opportunity to plead a pendent state law claim, he was not free to abuse the dual court system by filing in state court a second lawsuit and resubmitting his claim as one based solely on state law.

Id. at 760-61.

The "forum-election" interpretation of Moitie was explicitly rejected by the Fifth, Seventh and Ninth Circuits, in favor of a "claim-preclusion" interpretation. See Rivet v. Regions Bank of Louisiana, F.S.B., 108 F.3d 576, 585 (5th Cir.), reversed and remanded, 522 U.S. 470 (1998); Doe v. Allied-Signal, Inc., 985 F.2d 908, 912-13 (7th Cir. 1993); Sullivan v. First Affiliated Sec., Inc., 813 F.2d 1368, 1374-76 (9th Cir. 1987). Under this interpretation, "Moitie should only apply where a plaintiff files a state cause of action completely precluded by a prior federal judgment on a question of federal law." Rivet, 108 F.3d at 586 (citing Carpenter v. Wichita Falls Indep. Sch. Dist., 44 F.3d 362, 370 (5th Cir. 1995)).

In part, due to the "considerable confusion in the circuit courts," the Supreme Court

---

[1] The Fourth Circuit has never addressed the meaning of Moitie's footnote two.

granted certiorari in Rivet. 522 U.S. at 478. Specifically, the Court "clarif[ied] . . . that Moitie did not create a preclusion exception to the rule, fundamental under currently governing legislation, that a defendant cannot remove on the basis of a federal defense." Id. at 478. Because claim preclusion of a prior federal judgment is a defensive plea, the Court concluded that it did not provide a basis for removal, thereby rejecting the "claim preclusion" interpretation of Moitie advanced by the Fifth, Seventh, and Ninth Circuits. Id.

C.

The issue presented here is whether the "forum election" interpretation of Moitie is still a viable basis for removal. Microsoft's argument is essentially that because the Supreme Court did not overrule Moitie in Rivet, Sarkisian remains good law.[2] Microsoft further argues that the facts of this case are analogous to those in Moitie and thus, under the Second Circuit's "forum election" interpretation, removal is appropriate.

Although the Court in Rivet did not overrule Moitie or explicitly address the merits of the Second Circuit's "forum election" interpretation, it did note that "[t]he Moitie footnote . . . was a marginal comment and will not bear the heavy weight lower courts have placed on it." Rivet, 522 U.S. at 477. Significantly, the Court also stated that by holding that removal was improper

---

[2] The only authority cited by Microsoft in support of its argument is Metro. Council. 144 F.3d at 1171. In Metro. Council, the Eighth Circuit, upon remand from the Supreme Court, addressed whether its earlier opinion affirming the district court's exercise of removal jurisdiction was consistent with the Supreme Court's ruling in Rivet. Although the court in Metro. Council discussed Sarkisian and the history of Moitie, it never addressed the continuing viability of the "forum election" interpretation. Instead, the court reinstated its earlier opinion because that opinion was based on the All Writs Act. Id. at 1171. The court, in fact, specifically noted that its earlier opinion was not based on Moitie and, thus, declined to determine whether removal was warranted under the artful pleading doctrine. Id. Therefore, Metro. Council does not stand for the proposition attributed to it by Microsoft.

in the claim preclusion context, it was "clarify[ing] and confin[ing]" Moitie's footnote two "to its specific context." Id. at 472. Thus, the Court made clear that it was rejecting the expansive view given to the Moitie footnote by the courts of appeals, regardless of the interpretation. See generally Miller, supra, at 1816-28 (arguing that Moitie is of no precedential value for removal jurisdiction). On this basis alone, the "forum election" interpretation is no longer a viable basis for removal.

Moreover, Rivet can be read as explicitly rejecting Sarkisian and the "forum election" interpretation.[3] The Court stated: "[t]he Courts of Appeals have adopted differing views regarding the propriety of removing a state court action to federal court on the ground that the claim asserted is precluded by a federal judgment." Id. at 924. The Court then cited Sarkisian in a footnote listing some of those Courts of Appeals cases. Id. at 925 n.2. Thus, the Court made clear that it considered Sarkisian a case in which the Second Circuit developed a view based on claim preclusion. Accordingly, by rejecting the general concept of removal based upon claim preclusion by a federal judgment, the Court may well have intended to reject Sarkisian as well as Rivet. See 14B Charles Alan Wright et al., Federal Practice and Procedure § 3722, at 443 (1998) (stating that the Court explicitly rejected the Second Circuit's interpretation of the Moitie footnote).

This view of Rivet draws support from the fact that the "forum election" interpretation is partially based on the premise that removal is appropriate where a plaintiff's state law claims are

---

[3]The fact that no court has relied upon the "forum election" approach since the Supreme Court's decision in Rivet further supports the view that the Court rejected Sarkisian in its opinion.

virtually identical to those of a federal claim. This element of the "forum election" interpretation is analogous to the claim preclusion requirement that the claims in the second matter are based upon the same cause of action involved in the earlier proceeding.

For these reasons, I find that the "forum election" approach advanced by the Second Circuit in <u>Sarkisian</u> was overruled by the Supreme Court in <u>Rivet</u>. Accordingly, the State's motion to remand will be granted.[4]

A separate order to that effect is being entered herewith.[5]

Date: December 31, 2002

J. Frederick Motz
United States District Judge

---

[4] On December 27, 2002, Microsoft filed a "Supplemental Memorandum in Support of its Motion to Dismiss or, in the Alternative, to Stay." In this supplemental memorandum, Microsoft argues that the doctrine of claim preclusion bars West Virginia's state law claims in light of Judge Kollar-Kotelly's recent rulings. While Microsoft may be correct in asserting that claim preclusion applies, this court does not have jurisdiction over the matter, and thus the applicability of claim preclusion must ultimately be resolved by the West Virginia courts (subject to review by the Supreme Court of the United States).

[5] The State has requested attorney's fees and costs be awarded to it pursuant to 28 U.S.C. § 1447(c). However, because the motion to remand has raised a novel and complex question and because there was no evidence of bad faith in removal, this request will be denied. See <u>In re Lowe</u>, 102 F.3d 731, 733 n.2 (4th Cir. 1996); <u>Nat'l Ass'n of State Farm Agents, Inc. v. State Farm Mut. Auto. Ins. Co.</u>, 201 F. Supp. 2d 525, 531 n.12 (D. Md. 2002).